**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1868-17T4

CONSTANTINE MATTHEWS
and PATRICIA MATTHEWS,

     Plaintiffs-Appellants,

v.

CHARLES EHRMANN, LINDA
EHRMANN, and GREENLAND
LANDSCAPE CO., INC.,

     Defendants-Respondents.

_____

Argued December 18, 2018 – Decided February 20, 2019

Before Judges Gilson and Natali.

On appeal from Superior Court of New Jersey, Chancery Division, Passaic County, Docket No. C-000064-17.

John J. Segreto argued the cause for appellants (Segreto & Segreto, LLP, attorneys; John J. Segreto, of counsel and on the briefs).

Mark J. Semeraro argued the cause for respondents Charles Ehrmann and Linda Ehrmann (Kaufman,

Semeraro & Leibman, LLP, attorneys; Gregory K. Asadurian, on the brief).

William I. Strasser argued the cause for respondent Greenland Landscape Co., Inc. (Strasser & Associates, PC, attorneys; William I. Strasser, on the brief).

PER CURIAM

This appeal arises out of a land use dispute. Plaintiffs, who own a residential home, sued defendants seeking to enjoin them from performing certain commercial activities on an adjacent piece of property that plaintiffs contend were not permitted uses under the township's zoning ordinances. Plaintiffs also sought compensatory damages, alleging that defendants' activities were disturbing plaintiffs' "peace and tranquility" and adversely affecting their "health and well-being." Defendants moved to dismiss plaintiffs' complaint for failure to state a claim, arguing that their uses were pre-existing, nonconforming uses that had been authorized by two previously-issued zoning permits.

In orders entered on November 16, 2017, the Chancery court granted defendants' motions and dismissed plaintiffs' complaint with prejudice. The court also denied a request for attorney's fees made by defendants Charles and Linda Ehrmann (the Ehrmanns). Plaintiffs appeal from the orders dismissing their complaint and the Ehrmanns cross-appeal from the portion of the order denying their request for attorney's fees.

2

A review of the record and law establishes that defendants were not entitled to dismissal of plaintiffs' complaint. Moreover, while this appeal was pending, defendant Greenland Landscaping Company, Inc. (Greenland) ceased operating on the property. Accordingly, on remand, the Chancery court is directed to dismiss as moot plaintiffs' claim for injunctive relief against Greenland. We reverse and remand the remaining claims for further proceedings. We also dismiss, as moot, the request by the Ehrmanns for attorney's fees.

I.

We take the facts from plaintiffs' complaint and from certifications submitted by plaintiffs in opposition to the motion to dismiss. Because the Chancery court considered certifications and documents beyond the complaint, the motion to dismiss effectively became a motion for summary judgment. R. 4:6-2. Accordingly, we view the facts in the light most favorable to plaintiffs, the non-moving party. R. 4:46-2(c); Lederman v. Prudential Life Ins. Co. of Am., Inc., 385 N.J. Super. 324, 337 (App Div. 2006) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

Plaintiffs Constantine and Patricia Matthews own property in Wayne Township (the Township). The Ehrmanns own property (the Property) that is

adjacent to plaintiffs' property. Both properties are in an area zoned for residential use. Defendant Greenland leased the Property from the Ehrmanns and operated a nursery and landscaping business, which included a landscaping architectural office and a storage yard where landscaping and construction trucks and equipment were stored and repaired.

Plaintiffs purchased their property in 1992. From 1992 until 2000, the adjacent Property was used as a residence and it had a barn and open fields. In 2000, the Ehrmanns purchased the Property and they operated a nursery on the Property. The parties dispute the extent of the nursery and landscaping activities conducted on the Property between 2000 and 2015. Nevertheless, the parties agree that during that time a nursery and landscaping business was continuously operated on the Property. It is also undisputed that the Property had a dwelling that was used as a residence.

In October 2004, the zoning ordinances of the Township were amended. Wayne Township, N.J., Township Code § 134-29 (2014). The amended ordinance allowed agricultural uses in all zones, but with certain limitations. Among other things, the limitations prohibited four different activities:

> (5) Storage of any landscaping or earthmoving equipment and/or machines, including, but not limited to, lawn cutting equipment, trucks, trailers, tractors, leaf catchers, backhoes, etc., used for any purpose other

than those used exclusively to support the agricultural and horticultural operations of the subject property.

(6) The use of the premises as a contractor's and/or landscaper's yard.

(7) Storage of any item, such as and including, but not limited to, mulch, fertilizer, topsoil or animal feed of any nature, other than that which is solely used for and needed to support the agricultural and horticultural activities performed on the subject property.

(8) Any retail or wholesale sales of anything other than plants or animals that are or have been raised and/or grown on the premises.

[Wayne Township, N.J., Township Code § 134-29.1(5) to (8) (2014).]

By 2011, the Ehrmanns had leased the Property to Don Brady who operated a wholesale and retail nursery on the Property. In February 2011, Brady applied for a "[n]on-residential/[c]ommercial" zoning permit. The application described the current activity and buildings on the Property to be "wholesale & retail nursery, contractors yard & residential dwelling." The application also stated that those uses were "pre-existing, non-conforming use[s]." Both Brady and Charles Ehrmann signed the application. The application was stamped "APPROVED" and was signed by the Township's zoning officer on February 18, 2011. Six days later, on February 24, 2011, the Township's zoning officer issued a commercial zoning permit for the Property.

5

That permit allowed "wholesale & retail nursery conditioned upon compliance with Section 134-29 [of the Township Code]."

Plaintiffs allege that in late 2011, the activities on the Property became less like a nursery and more like a "contractor's and landscaping storage yard." Then, in 2015, Greenland started to operate on the Property. According to plaintiffs, Greenland graded and put down gravel "everywhere" on the Property. Plaintiffs also assert that Greenland operated a landscaping and construction yard on the Property and various trucks, heavy equipment, and machinery were stored and operated on the Property. Greenland also stored topsoil, stones, mulch, gasoline, and diesel fuel on the Property.

Plaintiffs and other neighbors complained to the Township officials about the activities on the Property. In June 2015, the Township issued summons to Charles Ehrmann for "failure to obtain and comply with requirements of home occupation" in violation of Section 134-34.1 of the Township Code.

Between August 2015 and July 2016, Greenland filed three applications for commercial zoning permits. While those applications described the uses of the Property in different terms, each of those applications sought permission for Greenland to use the Property as a wholesale and retail nursery, to operate a

6

landscaping architectural office, and to store equipment. All three of those applications were denied by the Township's zoning officer.

On September 16, 2016, Charles Ehrmann pled guilty to violating Section 134-34.1 of the Township Code. In connection with that plea, he was required to either apply for a zoning permit or to bring the Property into compliance with the zoning ordinance within thirty days.

On the same day that Charles Ehrmann pled guilty, Greenland applied for another "non-residential/commercial" zoning permit. Greenland described the activities to be conducted on the Property and the buildings as a "legal, pre-existing, nonconforming use wholesale & retail nursery, contractors yard & residential dwelling." The application also sought "acknowledgment that an existing building, lot or use meets ordinance requirements or is a pre-existing, nonconforming use." After receiving a requested site plan for the Property, on October 25, 2016, the Township zoning officer approved the application with conditions. Specifically, the October 25, 2016 zoning permit stated:

> Legal, pre-existing, non conforming use/wholesale & retail nursery, contractors yard & residential dwelling[.] Any expansion of property will require Planning Board approval. Aerial photo date 10/11/14 shows current condition on site. Prior approval date 2/15/2011 shows that this property is pre-existing, non-conforming use. The current activities conducted on

premises is wholesale and retail for nursery, contractors yard and residential dwelling[.]

On May 3, 2017, plaintiffs filed an action in the Chancery court seeking to permanently enjoin Greenland and the Ehrmanns from operating a landscaping and construction storage yard and landscape architectural office on the Property. Plaintiffs also sought compensatory damages alleging that the use of their property had been disturbed by the activities conducted by defendants on the Property.

Citing Rule 1:4-8, counsel for the Ehrmanns served a frivolous litigation letter on plaintiffs. When the lawsuit was not voluntarily withdrawn, the Ehrmanns filed a motion to dismiss in lieu of an answer in accordance with Rule 4:6-2(e). The Ehrmanns argued that plaintiffs had no claim for relief because defendants had valid zoning permits. In addition, the Ehrmanns argued that plaintiffs were effectively seeking to challenge the 2016 zoning permit and such a challenge was untimely.

In August 2017, Greenland also filed a motion to dismiss for failure to state a claim, arguing that its uses were allowed by the 2016 zoning permit. Greenland also argued that plaintiffs lacked standing, their action was time-barred, and the Township was an indispensable party to the litigation. Plaintiffs

A-1868-17T4

opposed both motions to dismiss and submitted certifications and other documents in opposition to the motions.

The Chancery court heard oral arguments in October 2017, and permitted the parties to file supplemental certifications. On November 16, 2017, the court granted the motions to dismiss and explained the reasons for that ruling on the record. That same day, the court issued two orders dismissing, with prejudice, plaintiffs' complaint against the Ehrmanns and Greenland.

In its oral decision, the court reasoned that plaintiffs had consciously decided not to bring an action in lieu of prerogative writs, but nonetheless were effectively collaterally attacking the zoning permits issued in 2011 and 2016. The court rejected plaintiffs' arguments that the 2011 permit was limited and the 2016 permit was void because that permit had not been issued by the Township's zoning board of adjustment. The court then held that the 2016 zoning permit resolved the issue of whether defendants' uses on the Property were lawful because it allowed defendants to conduct the activities on the Property.

Plaintiffs now appeal the orders dismissing their complaint. The Ehrmanns cross-appeal from the order denying their request for attorney's fees.

In March 2018, while this appeal was pending, Greenland ceased operating on and vacated the Property. Greenland then moved to dismiss the

appeal as moot.  Plaintiffs did not dispute that Greenland had vacated the Property, but opposed Greenland's motion, contending that they still had a claim for compensatory damages against Greenland.  We denied the motion to dismiss the appeal against Greenland as moot, but allowed Greenland to supplement the record with proof that it had, in fact, vacated the Property.

## II.

On appeal, plaintiffs make six arguments.  They contend (1) that the 2016 zoning permit was invalid and is void; (2) the Chancery court erred in dismissing their action as a collateral attack on the zoning permits; (3) defendants' uses on the Property were not permitted uses and were not pre-existing, nonconforming uses; (4) defendants are not conducting a landscaping business and retail nursery on the Property; (5) the Township is not an indispensable party; and (6) the Chancery court erred in granting the motion to dismiss and not properly analyzing the motions as motions for summary judgment.

We begin by identifying our standard of review.  Defendants filed motions to dismiss.  Such motions are governed by Rule 4:6-2 and focus on the pleadings. Accordingly, under Rule 4:6-2(e), a complaint can be dismissed if the facts alleged in the complaint do not state a viable claim as a matter of law.  The standard for determining the adequacy of plaintiff's pleadings is "whether a

cause of action is 'suggested' by the facts." Green v. Morgan Props., 215 N.J. 431, 451-52 (2013) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)).

Here, however, all parties submitted material outside the pleadings and the Chancery court considered and relied on those documents and certifications. Thus, the motions effectively became motions for summary judgment. See R. 4:6-2; R. 4:46. The standard for summary judgment is whether the moving parties have established that there are no genuine disputes as to any material facts, and, if so, whether the facts, viewed in the light most favorable to the non-moving party, entitles the moving parties to judgment as a matter of law. R. 4:46-2(c); Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405-06 (2014); Brill, 142 N.J. at 540.

When reviewing orders concerning motions to dismiss for failure to state a claim or motions for summary judgment, we use the same standard as the trial court and review the decisions de novo. Davis, 219 N.J. at 405; Smerling v. Harrah's Entm't, Inc., 389 N.J. Super. 181, 186 (App. Div. 2006). Moreover, in considering questions of law, our review is plenary. Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 135-36 (2017).

A.

The primary issues raised on this appeal concern municipal land use. Plaintiffs contend defendants are violating the local municipal zoning ordinance and seek to enjoin those alleged illegal activities and recover damages. In response, defendants assert that their activities are prior, nonconforming uses authorized by zoning permits issued in 2011 and 2016. To put those issues in context, we will briefly review the law governing municipal land use.

The authority to regulate land use in New Jersey rests with the Legislature, and the Legislature, in turn, can delegate that authority to municipalities. N.J. Const. art. IV, § 6, ¶ 2. The Legislature has delegated to municipalities the power to regulate local land use via the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163. Accordingly, the MLUL is the governing law.

Under the MLUL, the authority to regulate land use is exercised by three separate municipal bodies: the governing body, the planning board, and the zoning board of adjustment. Cox, Koenig, Drill & John-Basta, N.J. Zoning & Land Use Administration, § 1-2 (2018). Generally, the governing body establishes ordinances, the planning board creates an overall plan for the municipality, and the zoning board of adjustment reviews individual permit applications and grants or denies variances from the ordinances. See Vidal v.

Lisanti Foods, Inc., 292 N.J. Super. 555, 562-64 (App. Div. 1996) (describing the separate duties of each land use body).

The authority to enforce land use ordinances generally resides with the municipality. N.J.S.A. 40:55D-18. Private, "interested parties," such as a neighboring property owner, can also enforce zoning ordinances. Ibid. Thus, the MLUL provides in relevant part:

> In case any building or structure is erected, constructed, altered, repaired, converted, or maintained, or any building, structure or land is used in violation of this act or of any ordinance or other regulation made under authority conferred hereby, the proper local authorities of the municipality or an interested party, in addition to other remedies, may institute any appropriate action or proceedings to prevent such unlawful erection, construction, reconstruction, alteration, repair, conversion, maintenance or use, to restrain, correct or abate such violation, to prevent the occupancy of said building, structure or land, or to prevent any illegal act, conduct, business or use in or about such premises.

> [N.J.S.A. 40:55D-18.]

The MLUL recognizes the right of a property owner or user to maintain a pre-existing use, which has been prohibited by the subsequent enactment of a zoning ordinance. N.J.S.A. 40:55D-68. In that regard, the MLUL states:

> Any nonconforming use or structure existing at the time of the passage of an ordinance may be continued upon the lot or in the structure so occupied and any such

structure may be restored or repaired in the event of partial destruction thereof.

[N.J.S.A. 40:55D-68.]

The MLUL also authorizes any "person interested in any land upon which a nonconforming use or structure exists" to apply for a certification that the nonconforming uses or structures are permitted pre-existing uses or structures. Ibid. Applications for such a certification can be made at any time to the zoning board of adjustment. Ibid. If an application is made within one year of the adoption of the ordinance that rendered the use or structure nonconforming, the application can be made to "the administrative officer." Ibid. Specifically, the MLUL provides:

> The prospective purchaser, prospective mortgagee, or any other person interested in any land upon which a nonconforming use or structure exists may apply in writing for the issuance of a certificate certifying that the use or structure existed before the adoption of the ordinance which rendered the use or structure nonconforming. The applicant shall have the burden of proof. Application pursuant hereto may be made to the administrative officer within one year of the adoption of the ordinance which rendered the use or structure nonconforming or at any time to the board of adjustment.

> [N.J.S.A. 40:55D-68.]

14                                                          A-1868-17T4

The exclusive method of protecting a nonconforming use by permit more than one year from the enactment of a zoning ordinance is a certificate of nonconforming use from the board of adjustment. Twp. of Stafford v. Stafford Twp. Zoning Bd. of Adjustment, 154 N.J. 62, 69 (1998); See also N.J.S.A. 40:55D-20 ("[a]ny power expressly authorized by this act to be exercised by . . . [a] board of adjustment shall not be exercised by any other body, except as otherwise provided in this act.")  Thus, "municipal action in the land use control field taken in direct violation of law or without legal authority is void ab initio and has no legal efficacy." Irvin v. Twp. of Neptune, 305 N.J. Super. 652, 658 (App. Div. 1997) (quoting Hilton Acres v. Klein, 35 N.J. 570, 581 (1961)). Consequently, if a municipality issues a permit "contrary to [an] ordinance," it is "utterly void and subject to collateral attack." Garrou v. Teaneck Tryon Co., 11 N.J. 294, 306 (1953).

The burden of proving the existence of a nonconforming use lies with the party asserting the use. N.J.S.A. 40:55D-68; Berkeley Square Ass'n, Inc. v. Zoning Bd. of Adjustment of Trenton, 410 N.J. Super. 255, 269 (App. Div. 2009). Applications for a nonconforming use made to the zoning board of adjustment are entitled to a hearing that generally will include notice, the examination and cross-examination of witnesses, and determinations grounded

15                                                                                    A-1868-17T4

on competent and credible proofs.  Centennial Land & Dev. Co. v. Medford Twp., 165 N.J. Super. 220, 225 (Law. Div. 1979) (citing Tomko v. Vissers, 21 N.J. 226, 238-41 (1956)).

The MLUL does not require an owner to apply for a certificate of nonconforming use.  If, however, a nonconforming use is challenged, the owner will be required to defend that use as a pre-existing, nonconforming use. Normally, the first step in establishing that a use is pre-existing and nonconforming is to apply for a certificate in accordance with N.J.S.A. 40:55D-68.  See Twp. of Stafford, 154 N.J. at 69 ("Before asking a court for relief, any person . . . who applies more than one year after the adoption of the pertinent ordinance must first file an . . . application with the zoning board."); see also Borough of Bay Head v. MacFarlan, 209 N.J. Super. 134, 137 n.1 (App. Div. 1986) (noting court is not "the most appropriate forum for determining zoning questions, such as the existence of prior nonconforming uses").

B.

With this overview of municipal land use law, we turn to the arguments made by the parties.  Plaintiffs sought to enjoin activities by the defendants on the Property that did not conform to the applicable Township zoning ordinance. Specifically, plaintiffs contended that the ordinance did not permit a storage

yard where defendants were storing trucks, heavy equipment, and machinery. In response, defendants relied on zoning permits, which had been issued in 2011 and 2016. The Chancery court reasoned that the zoning permits were valid and plaintiffs were effectively seeking to collaterally attack those permits.

Plaintiffs were not challenging the action of any municipal body. Instead, they were seeking to enjoin what they contended were uses that were not permitted by the zoning ordinance. It was defendants who relied on the zoning permits issued in 2011 and 2016 as an affirmative defense. Those permits are not valid and are void ab initio. In 2004, the Township amended its zoning ordinance and prohibited storage yards, where trucks or equipment were stored when those trucks and equipment were not used on site. Defendants contend that the storage activity is a nonconforming, pre-existing use. Defendants did not, however, obtain a certification from the Township's zoning board of adjustment. Both the 2011 and 2016 permits were issued by the Township zoning officer. The zoning officer did not have the authority to issue those permits because those permits were issued more than one year following the adoption of the 2004 zoning amendment.

Moreover, the 2011 zoning permit did not authorize a storage yard. While the application requested the approval of such a use, the permit itself only

17

authorized a "wholesale & retail nursery conditioned upon compliance with Section 134-29 [of the Township Code]." It is the permit, not the application, which governs the permissible uses. See Motley v. Seaside Park Zoning Bd. of Adjustment, 430 N.J. Super. 132, 151 (App. Div. 2013) (explaining a permit holder has "no legal right to exceed what [a] zoning officer's permit authorize[s]").

Defendants also argue that plaintiffs' complaint should be dismissed because it was filed more than forty-five days after the 2011 and 2016 permits were issued. In making that argument, defendants rely on Rule 4:69-6(a). That rule, however, applies to actions in lieu of prerogative writs. R. 4:69; N.J. Const. art. VI, § 5, ¶ 4; see also In re LiVolsi, 85 N.J. 576, 593 (1981). As already noted, plaintiffs here did not file an action in lieu of prerogative writs; rather, they filed an action under section 18 of the MLUL. N.J.S.A. 40:55D-18. Thus, the time limitation in Rule 4:69-6(a) is not applicable.

III.

Accordingly, the Chancery court erred in dismissing plaintiffs' complaint as an invalid collateral attack on the zoning permits. We, therefore, reverse the orders dismissing plaintiffs' complaint and remand with instructions that the complaint be reinstated.

18                                                          A-1868-17T4

The existing record does not allow for an evaluation of whether defendants' activities on the Property were nonconforming, pre-existing uses. That issue will need to be developed on remand, including, where appropriate, through discovery. Moreover, the current record does not allow us to evaluate defendants' contentions that plaintiffs are estopped or barred by laches from asserting their claims. Those are also issues that will need to be developed on remand. We also do not address the issue of whether the Township is an indispensable party. That issue was not addressed by the Chancery court and we decline to address it for the first time on this appeal.

We can, however, narrow one issue. Defendant Greenland has submitted proofs that it has ceased all its operations and activities on the Property and has vacated the Property. Plaintiffs do not dispute that fact. Accordingly, plaintiffs' claim for an injunction against Greenland is moot. See Redd v. Bowman, 223 N.J. 87, 104 (2015). On remand, the Chancery court is directed to dismiss that claim as moot. The issue of whether plaintiffs can prove compensatory damages for the period of time when Greenland was operating on the Property is remanded for further proceedings.

Finally, we also dismiss as moot the cross-appeal by the Ehrmanns for attorney's fees. Given our reversal of the dismissal of plaintiffs' complaint, the

Ehrmanns are not currently prevailing parties and their claims for attorney's fees will not mature without further proceedings.

Reversed in part and dismissed as moot in part. The matter is remanded and we do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1868-17T4